IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

LASHUN SMITH, INDIVIDUALLY AND )                PLAINTIFFS
ON BEHALF OF ALL WRONGFUL DEATH )
BENEFICIARIES OF LEE DEMOND )
SMITH, DECEASED, )
      )
vs.                              )       CAUSE NO.:  1:07cv1256-LG-JMR
      )
HARRISON COUNTY, MISSISSIPPI, by and )
through its Board of Supervisors; et al.,       )           DEFENDANTS

## PLAINTIFFS' MEMORANDUM BRIEF IN RESPONSE TO "MOTION FOR QUALIFIED AND SOVEREIGN IMMUNITY AND SUMMARY JUDGMENT ON BEHALF OF DEFENDANTS, HARRISON COUNTY, MISSISSIPPI, GARY T. HARGROVE, HARRISON COUNTY CORONER, AND PAUL ANTHONY McGARRY, M.D., OFFICIALLY AND IN THEIR INDIVIDUAL CAPACITIES"

COME NOW Plaintiffs, Lashun Smith, Individually and on Behalf of All Wrongful Death Beneficiaries of Lee Demond Smith, Deceased, by and through their attorneys, and submit this memorandum brief in response to the "Motion for Qualified Immunity and Sovereign Immunity and Summary Judgment on Behalf of Defendants, Harrison County, Mississippi, Gary T. Hargrove, Harrison County Coroner, and Paul Anthony McGarry, M.D., officially and in their individual capacities."  Plaintiffs ask this Court to issue an order consistent with the statements and arguments contained herein.

### Concessions

On February 5, 2009, this Court entered an order granting a motion to dismiss all claims predicated on 42 U.S.C. §§ 1985 and 1986 asserted by the plaintiffs in their complaint.  In light

of the February 5th order, it is unnecessary for this Court to address the present defendants' renewed request that such claims be dismissed as a matter of law.

Plaintiffs concede that Gary Hargrove and Dr. McGarry are entitled to a dismissal of claims predicated on 42 U.S.C. § 1983. Plaintiffs seek only to hold Gary Hargrove and Dr. McGarry legally liable under claims brought under the substantive law of Mississippi.

Plaintiffs concede that, under 42 U.S.C. § 1983, they are not entitled to recover punitive damages from Harrison County as to any liability imposed on Harrison County pursuant to 42 U.S.C. § 1983.

Introductory Remarks

As this Court may recall at a Scheduling Conference, this Court queried the various counsel representing the defendants whether they intended to file motions for qualified immunity and, when defense counsel responded in the affirmative, this Court (1) noted that any substantive discovery would be stayed if such motions for qualified immunity were filed and (2) decided against setting any pre-trial discovery cut-offs. Staying substantive discovery was appropriate in light of the fact that qualified immunity is not simply an affirmative defense to civil liability but is "an entitlement not to stand trial or face the other burdens of litigation," including participation in pre-trial discovery activities. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). Thus, "the availability of qualified immunity ought to be decided by a court at the earliest possible opportunity preferably at the outset of the case, at which point plaintiff's well pleaded allegations are assumed to be true, and defendant's version of the facts is immaterial." *Torres v. Village of Sleepy Hollow*, 379 F. Supp. 2d 478, 483 (S.D.N.Y. 2005)(citing *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

This is because whether a defendant enjoys qualified immunity from liability pursuant to § 1983 does not depend on the existence of a genuine issue of material fact but, instead, involves "the legal question [of] whether any clearly established right was violated under the facts alleged by the nonmoving party." *Irving v. Dormire*, 519 F.3d 441, 445-446 (8th Cir. 2008)(citation omitted). The same applies to a governmental entity's or governmental agent's assertion of sovereign immunity when the existence of sovereign immunity merely turns on a legal question.

Plaintiffs' counsel has not noticed the depositions of the individually named defendants or other individuals with relevant information due to the filing of the "promised" motions for qualified immunity and this Court ruling on such motions for qualified immunity. This non-action on the part of Plaintiffs' counsel was reasonable in light of this Court's declaration that any substantive discovery would be stayed pending the resolution of such motions for qualified immunity. Plaintiffs have not been afforded any opportunity, much less sufficient opportunity, to conduct germane substantive discovery. The present matter is distinguishable from situations such as found in *Aguirre v. Nueces County, Texas*, 217 Fed. Appx. 348, 2007 WL 486854 (5th Cir. 2007), where the plaintiff failed to take advantage of the opportunity to conduct substantive discovery so as to respond to more than a preliminary inquiry into whether a defendant or defendants enjoyed qualified immunity. Plaintiffs believe that, at this stage in the present litigation process, it would be inappropriate to address the alternative request for a summary judgment because the plaintiffs have not been afforded the opportunity to conduct germane discovery. *See generally* Fed. R. Civ. P. 56(f).

This is especially true in light of the fact that, in seeking a summary judgment, the defendants' primary contention is that Lee Smith died as a result of natural causes related to a medical condition. The defendants contest that, on December 17, 2006, Lee Smith was the

3

victim of a battery that resulted in his death.  If Lee Smith's death resulted from injuries sustained in a battery, as opposed to natural causes, then, certain defendants are not entitled to a dismissal at this stage in this litigation based on qualified immunity or sovereign immunity.

<u>Genuine Dispute as to the Cause of Lee Smith's Death</u>

In the initial paragraph of their complaint, plaintiffs allege that, "while in custody of the Harrison County Adult Detention Center on December 17, 2006," Lee Smith "sustained injuries at the hands of certain Harrison County Deputies and/or others."  In the thirty-fifth numbered paragraph of the complaint and in asserting a § 1983 claim, plaintiffs allege that Lee Smith's constitutional rights were violated when excessive force was used and/or he was beaten.  Among the state law-based causes of action asserted are battery and assault.  In other words, plaintiffs expressly allege that, on December 17, 2006, Lee Smith was beaten by detention center personnel and/or by others with the knowledge of detention center personnel and that he died as a result of injuries sustained in such beating.  Plaintiffs further alleged that others, including Gary Hargrove and Dr. McGarry, committed acts or omissions intended to conceal or cover up that Lee Smith had been beaten or physically abused.

All defendants acknowledge that Lee Smith's family engaged the services of Dr. Matthias Okoye, a Pathologist with Nebraska Forensic Medical Services, P.C.; that Dr. Okoye performed an autopsy on January 8, 2007; and that Dr. Okoye issued a report in which he opined "that the cause of Lee Smith's death was asphyxia due to neck compression and physical restraint while in police custody."  Other defendants proffered a copy of Dr. Okoye's report as an exhibit in their submissions to this Court.  Unquestionably, Dr. Okoye's findings materially conflict with the findings of Dr. Paul McGarry, Harrison County's pathologist, that Lee Smith

4

died of "natural causes," namely, as a result of a blood clot which moved from the lower portion of his body to his chest causing his death.  Also, unquestionably, two pathologists employed by the United States Department of Defense purportedly reviewed the reports of Dr. McGarry and Dr. Okoye and "related histology slides and photos from both autopsies" and concurred with Dr. McGarry's conclusions.

Thus, there is conflicting expert opinion testimony as to the cause of Lee Smith's death. This dispute must be resolved by the trier of fact following a trial because plaintiffs have proffered admissible expert opinion testimony to support their theory that Lee Smith's death was due to a beating, and not the movement of a blood clot.  Even in a § 1983 case, this Court may not resolve such a pivotal fact issue as a matter of law at this earlier stage in the litigation.

If Lee Smith died of "natural causes" as contended by the defendants, then, the accounts of inmates Donald Morgan and David Bechler and of the various defendants and "fact" witnesses proffered by the defendants found in the various proffered affidavits are believable.  More importantly, plaintiffs could never prove that Lee Smith was beaten by detention center personnel or by others with the knowledge of detention center personnel and the plaintiffs have no viable claims against the defendants.

**On the other hand**, if Lee Smith died as a result of asphyxia due to neck compression and physical restraint, as opined by Dr. Okoye, then, the accounts offered by the defendants through various affidavits **are not believable**.  It would be reasonable to infer that Donald Morgan and David Bechler lied and that the defendants who were present at the detention center at the relevant time frame are concealing what actually occurred to Lee Smith immediately prior to his death.  It would also be reasonable to infer that Dr. McGarry failed to perform a proper autopsy and that he intentionally engaged in a cover up and that Gary Hargrove knowingly and

5

intentionally joined in or condoned Dr. McGarry's activities.  In the complaint, the plaintiffs delineated prior incidents where individuals in the custody of the Harrison County Sheriff were physically beaten.  If Lee Smith was beaten on December 17, 2007, it is reasonable to infer that detention center personnel and others associated with the Harrison County Sheriff might well endeavor to cover up such a beating.

The defendants do not challenge Dr. Okoye's qualifications or the manner in which he performed his autopsy of Lee Smith.  The defendants merely challenge the correctness of his opinion as to the cause of death.  Again, only the trier of fact may resolve this challenge and, then, only after, hearing evidence presented at a trial.

Plaintiffs must be allowed to conduct germane discovery, including the deposing of fact witnesses, like Donald Morgan and David Bechler; detention center personnel who were present at the facility during the pertinent time frame; medical personnel who treated Lee Smith; Investigator Carl Rhodes; and the pathologists upon whom the defendants rely.  This conflict as to the true cause of Lee Smith's death colors the issue of whether the defendants enjoy qualified immunity as to the § 1983-based claim, enjoy immunity as to the state law-based claims pursuant to § 11-46-9(1)(m) of the *Code of Mississippi* or are entitled to a summary judgment.

<u>Argument</u>

**This Court should not find that, as a matter of law, Harrison County enjoys either qualified immunity or sovereign immunity as to all claims asserted against it by the plaintiffs.**

In seeking a dismissal of claims predicated on 42 U.S.C. § 1983, Harrison County contends that the plaintiffs "cannot prove that Lee Demond Smith suffered a violation of his Federal Constitutional rights or rights under the Mississippi Constitution, nor can they point to

the existence of a policy, custom or practice of Harrison County which caused him any constitutional violation." *Memorandum of Authorities in Support of Motion for Qualified and Sovereign Immunity and Summary Judgment on Behalf of Defendants Harrison County, Mississippi, Gary T. Hargrove, and Paul Anthony McGarry, M.D., Officially and in Their Individual Capacities* at 6. Harrison County also suggested that it may not be held legally liable because it has "no control over the employees of the Sheriff of Harrison County." *Id*. at 10. As to the suggestion, Harrison County wrote:

> It is a fact that under Mississippi Law, *Miss. Code Ann.* § 19-25-69, on December 17, 2006, former sheriff, George Payne, had exclusive authority and control of the deputies at the HCADC. The Board of Supervisors' <u>only</u> authority regarding the sheriff and the HCADC is one of setting the budget and funding it accordingly. … The Harrison County Board of Supervisors, acting pursuant to Statute, has no authority to: 1. Control the day to day operations at the HCADC; 2. set policies and procedures at the HCADC; 3. control how the sheriff trains his deputies; and 4. tell the sheriff who he can hire or fire as deputies or other employees of the sheriff's department.

*Id*. at 9-10 (emphasis in original).

"[T]he settled rule [is] that 'the unnecessary and wanton infliction of pain … constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Hudson v. McMillian*, 503 U.S. 1, 5, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)(quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)). Any unnecessary beating of Lee Smith by detention center personnel must constitute a violation of a clearly established constitutional right in that inmates, like Lee Smith, are constitutionally protected against being unnecessarily exposed to excessive physical force. "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S. Ct. 1790, 128 L. Ed. 2d 811 (1994)(citations and quotations omitted). *See also,*

7

*generally, Brown v. Lippard*, 472 F.3d 384 (5th Cir. 2006).  "Unnecessary and wanton infliction of pain, including inflictions of pain without penological justification, '"constitute[ ] cruel and unusual punishment forbidden by the Eighth Amendment."'"  *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007(quoting *Hope v. Pelzer*, 536 U.S. 730, 737, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)(quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)). While *Farmer* and *Lenz* involved a claim brought under the Eighth Amendment by a convicted imprisoned inmate, the basic proposition that an individual, including someone like Lee Smith, should not be subjected to a violent assault while in custody must be the same.  See *Kahle v. Leonard*, 477 F.3d 544 (8th Cir. 2007), where Kahle was a pretrial detainee and, after noting that Kahle's § 1983 claim must be analyzed under the Fourteenth Amendment's Due Process Clause, and not the Eighth Amendment, the Eighth Circuit observed that "[t]his makes little difference as a practical matter, though:  Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."  477 F.3d at 550 (citations omitted).  Thus, it is immaterial whether Lee Smith was a pretrial detainee awaiting trial for a new offense or a convicted inmate because he was being detained also in connection with a possible parole violation.

No defendant has suggested that Lee Smith was a difficult inmate or a disciplinary problem, in general or on December 17, 2006.  No defendant has suggested that, on December 17, 2006, in the day room, there was any need to physically accost or restrain Lee Smith or, specifically, to compress his neck.  No defendant has sought to justify the use of any force, much less excessive force, on Lee Smith.  Instead, all defendants deny that Lee Smith was subjected to any physical force.

Harrison County's assertion that there were no violations of Lee Smith's constitutional rights is based on Lee Smith having died from natural causes, as opposed to having been subjected to extreme physical force or a beating while in custody at the subject detention center, the opinion of Dr. Okoye.  As previously discussed herein, there are conflicting opinions from pathologists as to the cause of Lee Smith's death on December 17, 2006.  If the trier of fact ultimately accepts Dr. Okoye's opinion as to the cause of death, then, the accounts of the events of December 17, 2006, upon which Harrison County rely are highly suspect, if not totally unbelievable.  Also, as previously discussed herein, plaintiff has been afforded no opportunity to cross-examine the individuals who executed the affidavits that have been proffered into the record or to examine others who may possess relevant information as to what occurred on December 17, 2006.

Most importantly, if, as Dr. Okoye opines, Lee Smith was beaten and/or his neck compressed due to the excretion of excessive physical force, then, there was a clear violation of his constitutionally protected rights.  Harrison County is wrong that the plaintiffs can never prove a violation of Lee Smith's constitutionally protected rights.

While Harrison County referenced § 19-25-69, Harrison County cited no legal authority definitively stating that, as a consequence of § 19-25-69, a Mississippi county may not be held legally liable under § 1983 or the Mississippi Tort Claims Act.  In *Hollands v. Attalla County, Mississippi*, No. Civ.A. 1:94CV206DD, 1995 WL 1945442 (N.D. Miss. Aug. 1, 1995), Hollands sued Attalla County and Sheriff Steed, individually and in his official capacity.  The court correctly observed that, as to the asserted § 1983 claim, Attalla County could not be held liable for Sheriff Steed's action or inaction on the basis of *respondeat superior* but could only be held liable as a policymaker.  In denying Attalla County's summary-judgment motion, the court wrote:

"This court is of the opinion that Sheriff Steed constitutes an Attala County 'policymaker' not only for law enforcement decisions, but also for decisions affecting the operation of the county jail and the custody of the prisoners contained therein.  *See* Miss. Code Ann. §§ 19-25-35; 19-25-63; 19-25-69; 19-25-71; 47-1-21."   1995 WL 1945442.   In *Alves v. Harrison County, Mississippi*, Case 1:07-cv-01256-LG-JMR (S.D. Miss. Feb. 23, 2007), the court expressly rejected Harrison County's reliance on § 19-25-69 as a "shield" against liability:

> However, a claim against a sheriff in his official capacity is treated as a claim against the county, and sheriffs in Mississippi are final policymakers with respect to all law enforcement decisions made within their counties.  *Brooks v. George County, Miss.*, 84 F.3d 157, 165 (5th Cir. 1996).  Additionally, the Fifth Circuit has noted in *dicta* that a district court erred when it dismissed Harrison County but refused to dismiss the official capacity claim against Sheriff Payne.  *Harris v. Payne*, 254 Fed. Appx. 410, 422 (5th Cir. Nov. 19, 2007).  The Fifth Circuit explained that Harrison County is liable for Payne's acts as Sheriff, because he is the final policymaker for Harrison County, regardless of the existence of a policy or custom.  *Harris*, 254 Fed. Appx. At 422.  Thus, since Harrison County and Sheriff Payne are essentially the same party pursuant to 42 U.S.C. § 1983, this Court must examine Alves' claims against them simultaneously, and the Harrison County's argument is without merit.

*Alves*, slip op. at 5.

In *Brown v. Thompson*, 927 So. 2d 733 (Miss. 2006), Brown was involved in an automobile accident with Deputy Thompson of the Bolivar County Sheriff's Department.  Brown sued Thompson and the Bolivar County Sheriff's Department.  Bolivar County Sheriff's Department answered that it is not a political subdivision separate and apart from Bolivar County, Mississippi.  The Mississippi Supreme Court held that "the Sheriff's Department does not enjoy a separate legal existence, apart from Bolivar County, and the case was properly dismissed for failure to name a political subdivision defendant."  927 So. 2d at 737.  The analysis

employed by the Mississippi Supreme Court indicates that, as to deputy sheriffs, the employer and ultimately responsible entity is the county.

Plaintiffs acknowledge that, under 42 U.S.C. § 1983, Harrison County's liability is limited to "municipal liability" and that Harrison County cannot be liable under the doctrine of *respondeat superior* for the wrongful conduct of its employees or agents. Ultimately, plaintiffs will have to demonstrate the following three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). During the relevant time period, former Sheriff Payne was Harrison County's policymaker with regard to activities at the subject detention center, including the treatment of inmates or detainees.

As observed in *Piotrowski*, an official policy need not be "contained in duly promulgated policy statements, ordinances or regulations" but "may also be evidenced by custom that is: "… a persistent, widespread practice of City officials or employees, which, although not officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy …." 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)). As declared in *Alves*:

> A plaintiff must also demonstrate that the municipality was "deliberately indifferent" to the known consequences of the policy. [*Piotrowski*, 237 F.3d] at 580. Deliberate indifference is an objective standard that encompass "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002).
>
> Therefore, in cases in which it is alleged that a widespread custom or practice constitutes a policy, the plaintiff must also demonstrate that the policymaker had actual or constructive knowledge of the actions of his subordinates. *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984). "Constructive

> knowledge may be attributed to the governing body on the ground
> that it would have known of the violations if it had properly
> exercised its responsibilities, as for example, where the violations
> were so persistent and widespread that they were the subject of
> prolonged public discussion or of a high degree of publicity."
> *Webster*, 735 F.2d at 842. The sheer numerosity of incidents can
> provide evidence of constructive knowledge. *Mahoney v. City of
> Jackson*, 2008 U.S. Dist. LEXIS 57224 at *11 (S.D. Miss. July 25,
> 2008)(citing *Pineda v. City of Houston*, 291 F.3d 325, 330 (5th Cir.
> 2002)).

*Alves*, slip op. at 6-7.

In *Alves*, Alves alleged that, on January 7, 2006, while being detained in the Harrison

County Adult Detention Center, he was the victim of excessive force. As in the present matter,

Alves alleged an official policy of abusing inmates and detainees at the HCADC. Alves

proffered evidence of numerous assaults on inmates or detainees by detention center personnel

occurring since 2004. Having been allowed to conduct pre-trial discovery, Alves proffered

testimony gleamed from William Martin, a member of the Harrison County Board of

Supervisors, "that he had spoken with Sheriff Payne regarding the violence at the jail over a

number of years," as well as the following testimony: "When he was asked to explain his

concerns about violence at the jail, he testified that the Board periodically received complaints

from inmates that they were being beaten. Martin testified that Payne replied that they were

working on the problem." *Alves*, slip op. at 11. The court found "that Alves ha[d] produced

sufficient evidence from which a jury could conclude that the custom of abuse of inmates at the

jail was sufficiently widespread to constitute an official policy;" that "the evidence that hundreds

of unjustified assaults were committed against inmates between 2004 and 2006 tends to show

that Sheriff Payne either knew or should have known of the violence;" that, "even members of

the Harrison County Board of Supervisors, who were farther removed from the jail than the

Sheriff, were aware of the culture of violence and inmate abuse at the jail;" and that "the

evidence of this custom of abuse at the jail [was] indicative of deliberate indifference." *Id*. at 11-12.

The *Alves* court had little difficulty in finding "that a genuine issue of material fact exist[ed] regarding whether the alleged custom of inmate abuse was a moving force behind the alleged assault of Alves." *Id*. at 12. The "culture" among detention center personnel evinced a belief that abusing inmates was humorous or condoned.

Once more, the present plaintiffs are handicapped by the defendants' stated position that Lee Smith died as a result of natural causes and was not the victim of a beating or excessive restraining and by the fact that they have not conducted any substantive discovery. Through media accounts; reported opinions, such as *Golden v. Harrison County, Misssissippi*, No. 1:06CV1006 LG-JMR, 2008 WL 4603275 at *4 (S.D. Miss. Oct. 14, 2008), and unreported opinions, such as *Alves*, the plaintiffs are aware of potentially similar incidents occurring at the subject detention center prior to December 17, 2006. Through discovery, the plaintiffs would seek to uncover factual information regarding such prior incidents, including Sheriff Payne's knowledge of those incidents and the knowledge or appreciation of such incidents possessed by members of the Harrison County Board of Supervisors. Without allowing pertinent discovery, Harrison County should not be able to secure a decision "on the merits."

As to its possible liability under Mississippi state-law-based causes of action, Harrison County asserts that all such causes of action "are … barred by the Mississippi Tort Claims Act, specifically, Miss. Code Ann. § 11-46-9(1)(m) wherein Harrison County and its employees are entitled to sovereign immunity for any claim brought by an inmate in a state or county penitentiary." *Memorandum of Authorities in Support of Motion for Qualified and Sovereign Immunity and Summary Judgment on Behalf of Defendants Harrison County, Mississippi, Gary*

*T. Hargrove, and Paul Anthony McGarry, M.D., Officially and in Their Individual Capacities* at

5. Section 11-46-9(1)(m) provides:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable of any claim:
>
> > Of any claimant who at the time the claim arises is an inmate of any detention center … regardless of whether such claimant is or is not an inmate of any detention center … when the claim is filed.

In its submissions to this Court, Harrison County merely references § 11-46-9(1)(m) and discusses no applicable case law.  In *Lee v. Thompson*, 859 So. 2d 981 (Miss. 2003), the Coahoma County defendants contended that Randy Lawson committed suicide by hanging himself in a jail cell while Lee, on behalf of Lawson's surviving daughter and sole wrongful-death beneficiary, alleged that Lawson "was killed by the sheriff's department of Coahoma County by a severe beating administrated by one or more deputies."  859 So. 2d at 984.  There was information that could support an ultimate factual finding that Lawson died as a result of a severe beating, as opposed to having committed suicide.  In the complaint, Lee alleged intentional acts by the Coahoma County defendants to kill Lawson and to destroy evidence.

The Mississippi Supreme Court wrote:

> First, there is no doubt that the jail inmate provision of the MTCA applies in this case as to any non-intentional/non-criminal acts alleged to have been committed upon inmate Lawson by the Sheriff and/or his deputies while in the course and scope of their employment with Coahoma County.  Thus, while the trial court correctly dismissed the claims for alleged negligent acts by the employees, the trial court erred to the extent that it dismissed all but count I of the complaint, keeping in mind that in each count of the complaint, Lee realleged and readopted all previous allegations in the complaint, which would include the allegations of intentional criminal acts.  Thus, as to these intentional acts, Lee, for and on behalf of her daughter and Lawson's sole wrongful

> beneficiary, Emily, still had viable claims, not under the MTCA, but under our wrongful death statute.

859 So. 2d at 987 (citations omitted)(Count I asserted a claim of assault and battery).  Later in the opinion, the Mississippi Supreme Court added:

> While the trial court correctly dismissed the claims based on the alleged non-intentional acts of the Coahoma County defendants under the provisions of the MTCA, and correctly kept viable the intentional tort claims in count I of the complaint, the trial court incorrectly dismissed other claims which remained viable under the wrongful death statute based on the alleged intentional acts of the Coahoma County defendants.

859 So. 2d at 992-93.

As to claims of intentional or criminal conduct, Harrison County enjoys no immunity from civil liability pursuant to § 11-46-9(1)(m) simply because Lee Smith was an inmate at the detention center.  Section 11-46-9(1)(m) could only entitle Harrison County to a dismissal of any state law-based cause of action predicated on non-intentional or non-criminal conduct.

### As a matter of law, Gary Hargrove and Dr. Paul McGarry do not enjoy immunity as to all of the asserted state-law-based causes of action.

Plaintiffs have conceded that Gary Hargrove and Dr. McGarry are entitled to a dismissal of claims predicated on 42 U.S.C. § 1983.  The overwhelming bulk of the arguments presented by Gary Hargrove and Dr. McGarry in their motion and supporting memorandum brief addressed why each could not be held legally liable pursuant to § 1983.  As to the state-law-based claims, each asserted that such claims "are barred by the Mississippi Tort Claims Act, specifically Miss. Code § 11-46-9(1)(m) wherein Harrison County and its employees are entitled to sovereign immunity for any claim brought by an inmate in a state or county penitentiary."  *Motion for Qualified and Sovereign Immunity and Summary Judgment on Behalf of Defendants, Harrison*

*County, Mississippi, Gary T. Hargrove, Harrison County Coroner, and Paul Anthony McGarry, M.D., Officially and in Their Individual Capacities* at 5; *Memorandum of Authorities in Support of Motion for Qualified and Sovereign Immunity and Summary Judgment on Behalf of Defendants Harrison County, Mississippi, Gary T. Hargrove, and Paul Anthony McGarry, M.D., Officially and in Their Individual Capacities* at 5.  Dr. McGarry alone asserts that, pursuant to § 41-37-7 of the *Code of Mississippi*, he enjoys "full immunity [with] regard to any claim for damages as a result of performing an autopsy."  *Motion of Qualified and Sovereign Immunity and Summary Judgment on Behalf of Defendants Harrison County, Mississippi, Gary T. Hargrove, and Paul Anthony McGarry, M.D., Officially and in Their Individual Capacities* at 5.

Gary Hargrove and Dr. McGarry contend that all of the state law-based causes of action asserted in the plaintiffs' complaint must be dismissed pursuant to § 11-46-9(1)(m) of the *Code of Mississippi*:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable of any claim:
>
>> Of any claimant who at the time the claim arises is an inmate of any detention center … regardless of whether such claimant is or is not an inmate of any detention center … when the claim is filed.

Gary Hargrove and Dr. McGarry did not discuss this statutory provision in detail or any applicable opinions applying this statutory provision.

In *Lee v. Thompson*, 859 So. 2d 981 (Miss. 2003), the Coahoma County defendants contended that Randy Lawson committed suicide by hanging himself in a jail cell while Lee, on behalf of Lawson's surviving daughter and sole wrongful-death beneficiary, alleged that Lawson "was killed by the sheriff's department of Coahoma County by a severe beating administered by one or more deputies."  859 So. 2d at 984.  There was information that could support an ultimate

16

factual finding that Lawson died as a result of a severe beating, as opposed to having committed

suicide.  In the complaint, Lee alleged intentional acts by the Coahoma County defendants to kill

Lawson and to destroy evidence.

The Mississippi Supreme Court wrote:

> First, there is no doubt that the jail inmate provision of the
> MTCA applies in this case as to any non-intentional/non-criminal
> acts alleged to have been committed upon inmate Lawson by the
> Sheriff and/or his deputies while in the course and scope of their
> employment with Coahoma County.  Thus, while the trial court
> correctly dismissed the claims for alleged negligent acts by the
> employees, the trial court erred to the extent that it dismissed all
> but count I of the complaint, keeping in mind that in each count of
> the complaint, Lee realleged and readopted all previous allegations
> in the complaint, which would include the allegations of
> intentional criminal acts.  Thus, as to these intentional acts, Lee,
> for and on behalf of her daughter and Lawson's sole wrongful
> death beneficiary, Emily, still had viable claims, not under the
> MTCA, but under our wrongful death statute.

859 So. 2d at 987(citations omitted)(Count I asserted a claim of assault and battery).  Later in the

opinion, the Mississippi Supreme Court added:

> While the trial court correctly dismissed the claims based
> on the alleged non-intentional acts of the Coahoma County
> defendants under the provisions of the MTCA, and correctly kept
> viable the intentional tort claims in count I of the complaint, the
> trial court incorrectly dismissed other claims which remained
> viable under the wrongful death statute based on the alleged
> intentional acts of the Coahoma County defendants.

859 So. 2d at 992-93.

Thus, as to claims of intentional or criminal conduct, Gary Hargrove and Dr. McGarry

enjoy no immunity from civil liability pursuant to § 11-46-9(1)(m) simply because Lee Smith

was an inmate at a detention center.  Gary Hargrove and Dr. McGarry are only entitled to a

dismissal of any state law-based cause of action predicated on non-intentional or non-criminal

conduct.

As to Dr. McGarry's assertion of immunity from civil liability based on § 41-37-7, it must be observed that § 41-37-7 provides that "[a] duly licensed physician authorized to perform an autopsy … **and who, in good faith**, complies with the provisions of this chapter in the performance of an autopsy, shall not be liable for damages on account thereof." (Emphasis added.) Plaintiffs found no case law applying § 41-37-7 or discussing what would constitute "good faith" or, alternatively, "bad faith" in performing an autopsy. Plaintiffs did discover the opinion in *Laughlin v. Prudential Ins. Co.*, 882 F.2d 187 (5th Cir. 1989), that may offer some guidance.

James Laughlin, a resident of Alcorn County, Mississippi, died from a gunshot wound to his head. His wife, Rebecca, was the only other person in the room at the time of shooting. The coroner concluded that there was a death by accidental means. Local law enforcement officials did not seek an autopsy and also concluded that the death was accidental. Rebecca made claims to five insurers who had issued life insurance policies covering James. Under each policy, no benefits were due if the death resulted from suicide or homicide caused by the beneficiary. In January 1986, Rebecca commenced a breach-of-contract lawsuit against the five insurers. Under Mississippi law, the insurers were forbidden to require exhumation or autopsy as a condition precedent to the payment of death benefits. In January 1986, to secure an exhumation and autopsy, there would have to be family consent or a court order obtained pursuant to § 41-37-9 and based on a petition filed by the county or district attorney, alleging that the death resulted from criminal means. Pursuant to § 41-37-19, evidence obtained in such a court-ordered autopsy would be inadmissible in a civil proceeding if Rebecca objected to its admission.

The five insurers contacted Dr. Bennett, the Mississippi State Medical Examiner, to assist in securing an autopsy. Dr. Bennett was retained as a fee-paid expert and the five insurers

agreed to pay all incurred costs for the performing of the autopsy.  Dr. Bennett refused an offer by local officials to assist him in obtaining a court order under § 41-37-9 because the autopsy results would not then be admissible in the breach-of-contract lawsuit.

In July 1986, a new Mississippi Medical Examiners Act was enacted that broadened the State Medical Examiner's authority to investigating deaths and provided that, in cases of suspected homicide, a disinterment and autopsy could be authorized by the State Medical Examiner without a court order and that any person could petition an appropriate circuit court to order an exhumation and autopsy.  Most important, for the five insurers, the evidence obtained through such autopsies would be admissible in civil cases.  Relying on the new Medical Examiners Act, Dr. Bennett filed a petition seeking authority to exhume James's remains.  When Dr. Bennett left Mississippi to become the Iowa State Medical Examiner, Eddings, his former administrative assistant, continued to pursue a ruling on the petition.

Rebecca instituted a separate lawsuit against the five insurers, Dr. Bennett and Eddings in which she asserted a claim of abuse of process based on the alleged bad faith initiation of a homicide investigation and attempts by the office of the State Medical Examiner to have the body of her husband exhumed and an autopsy performed.  Dr. Bennett and Eddings were allegedly "doing the bidding" of the five insurers.  The five insurers removed the matter to federal court, arguing that Eddings had been fraudulently joined.  The Fifth Circuit found that the five insurers failed to meet their burden of showing fraudulent joinder.

One of the arguments rejected by the Fifth Circuit was that Eddings enjoyed immunity from civil liability pursuant to § 41-61-65(2) that provides that "[a]ny medical examiner or duly licensed physician performing authorized investigations and/or autopsies … who, in good faith, complies with the provisions of Sections 41-61-51 through 41-61-79 in the determinations of the

cause and/or manner of death for the purpose of certification of that death, shall not be liable for damages on account thereof, and shall be immune from any civil liability that might otherwise be incurred or imposed."   The Fifth Circuit noted that abuse of process is an intentional tort and requires a showing of bad faith and declared that § 41-61-65(2), "which protects only good faith conduct, provides no immunity against liability for abuse of process."   If Eddings engaged in using the authority of the Medical Examiner for an improper purpose, aiding an insurer to avoid having to pay a claim, then, she had not been acting in good faith.

In the present matter, the plaintiffs allege that Dr. McGarry did not perform a "good faith" autopsy of Lee Smith and/or did not prepare a "good faith" report concerning the cause of death.  The plaintiffs allege that Dr. McGarry engaged in the efforts to cover up the true cause of Lee Smith's death.  Such efforts would be intentional and would not come under the "good faith" immunity afforded by § 41-37-7.  Thus, as a matter of law, Dr. McGarry enjoys no absolute immunity from civil liability.

Attached hereto and marked as "Exhibit A" is a copy of an affidavit executed by Dr. Okoye.  In this affidavit, Dr. Okoye restated his opinion that, based on the autopsy that he performed, Lee Smith "had sustained compressions to his neck, physical restraints to his extremities, [and] blunt force to the head, chest and extremities" and "died from an asphyxia due to neck compression and physical restraint."   In addition, in explaining his rejection of Dr. McGarry's opinion that Lee Smith "died from natural causes as a result of a pulmonary embolism; thrombi in the pelvic veins; hemorrhagic lobular foci in the right lungs, [and] hemorrhagic congestion of both lungs," Dr. Okoye wrote:  I did not find any forensic evidence to support Dr. McGarry's findings that Lee Demond Smith died from a pulmonary embolism.  In fact, such a conclusion cannot be made without dissecting the lungs.  Dr. McGarry never

20

dissected the lungs of Lee Demond Smith." *Affidavit fo Matthias Ikechukwu Okoye, M.D., J.D., F.R.C.P.* at 2.  Dr. Okoye offers expert opinion testimony that Dr. McGarry did not perform an autopsy in good faith because Dr. McGarry failed to dissect Lee Smith's lungs and because such dissection was necessary before a pathologist could state that a pulmonary embolism was a cause of death.  Dr. Okoye's testimony would support a factual finding that Dr. McGarry participated in a cover up of how Lee Smith died and of his having been beaten or physically restrained while being detained at the subject detention center.

Respectfully submitted this the 23rd day of March, 2009.

s/ C. Carter Clay
C. CARTER CLAY, PRO HAC VICE
MARY B. COTTON, MSB# 100176
JOHN D. GIDDENS, MSB# 9357
*On behalf of Plaintiff, Lashun Smith, Individually and on Behalf of All Wrongful Death Beneficiaries of Lee Demond Smith, Deceased*

OF COUNSEL:

PITTMAN, DUTTON, KIRBY & HELLUMS, P.C.
2001 Park Place North
Ste. 1100
Birmingham, Alabama 35203
Phone:  (205)322-8880
Facsimile: (205)328-2711
Email:  phdkh-efiling@pdkhlaw.com

OF COUNSEL:

John D. Giddens, PA
226 North President Street
Jackson, Mississippi 39201
Phone: (601)355-2022
Facsimile: (601)355-0012

## CERTIFICATE OF SERVICE

This is to certify that I have this 23rd day of March, 2009, filed a copy of the above and foregoing electronically with the Clerk of Court via CM/ECF system which will send notification electronically of such filing to the following:

Karen J. Young
MEADOWS LAW FIRM
P.O. Box 1076
Gulfport, Mississippi 39502

Cyril T. Faneca
Joe Gewin
Haley Broom
Dukes, Dukes, Keating & Faneca, P.A.
2909 13th Street, Sixth Floor
P.O. Drawer W
Gulfport, Mississippi 39502


James L. Davis, III
P. O. Box 1839
Gulfport, MS 39502

Ian A. Brendel
JIM DAVIS, P.A.
P. O. Box 1521
Gulfport, MS 39502


s/ C. Carter Clay
Of Counsel