**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LASHUN SMITH, INDIVIDUALLY** | § | **PLAINTIFF** |
| **AND ON BEHALF OF ALL** | § | |
| **WRONGFUL DEATH** | § | |
| **BENEFICIARIES OF LEE DEMOND** | § | |
| **SMITH, DECEASED** | § | |
| | § | |
| **V.** | § | **CAUSE NO. 1:07cv1256-LG-JMR** |
| | § | |
| **HARRISON COUNTY, MISSISSIPPI,** | § | |
| **BY AND THROUGH ITS BOARD OF** | § | |
| **SUPERVISORS; et al.** | § | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER GRANTING HEALTH**
**ASSURANCE'S SECOND MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is Defendant Health Assurance, LLC's second Motion for Summary Judgment [152]. Plaintiff Lashun Smith filed this action for her son Lee Demond Smith's alleged wrongful death, while he was in the custody of the Harrison County Adult Detention Center ("HCADC"). Health Assurance argues (1) Mrs. Smith cannot prove a civil conspiracy, and (2) alternatively, Health Assurance is not vicariously liable for its nurses' participation in a civil conspiracy. The Court has considered the parties' submissions and the relevant legal authority. The motion is granted.

**FACTS AND PROCEDURAL HISTORY**

Lee was arrested on December 4, 2006, and placed into the custody of the HCADC until his death on December 17. Around mid-day on the day of his death, he collapsed on the floor of the day room in B-Block, E-Section. Fellow inmates David Beechler and Donald Morgan assisted him and notified deputies. Deputies, jail nurses

Gay Hartley and Shirley Sumrall, Beechler, and Morgan performed C.P.R. on Lee until the ambulance arrived. Hartley and Sumrall were employed by Defendant Health Assurance, LLC. The ambulance took him to Garden Park Hospital at approximately 1:45 p.m. En route one deputy continued to perform C.P.R.

Lee was pronounced dead at the hospital at approximately 2:01 p.m. The autopsy was performed the next day by medical examiner Dr. Paul McGarry. He reported that Lee died naturally from a pulmonary embolism. Harrison County Coroner Defendant Gary T. Hargrove reported likewise.

Several days later, Lee's family had a second autopsy performed by Dr. Matthias Okoye. He concluded Lee's death was a homicide caused by strangulation due to neck compression and physical restraint. Dr. Okoye also found no evidence of a pulmonary embolism and opined that the first autopsy failed to dissect Lee's lungs which was necessary in order to diagnose a pulmonary embolism.

Mrs. Smith subsequently filed this wrongful death action under Sections 1983, 1985, 1986, and various state law claims, alleging her son was killed by deputies while in the custody of the HCADC and that Health Assurance's nurses conspired to cover up the excessive force. By previous orders, the Court dismissed all claims but one against Health Assurance. The remaining claim is that Sumrall and Hartley engaged in a civil conspiracy to cover up the true cause of Lee's death and Health Assurance is vicariously liable.

## DISCUSSION

A motion for summary judgment shall be granted "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. The Court must view the evidence in the light most favorable to the non-moving party. *Abarca v. Metro. Transit. Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). A "material fact" is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

The party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 325. Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324-25. "[W]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon . . . mere allegations or denials . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Health Assurance first argues that there is no evidence that its nurses engaged in a civil conspiracy.

To prove civil conspiracy Mrs. Smith must show "an agreement between [a Health Assurance nurse and another person] for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully" which results in damages. *Braddock Law Firm, PLLC v. Becnel*, 949 So. 2d 38, 44 (¶20) (Miss. Ct. App. 2006). "It is elementary that a conspiracy requires an agreement between the co-conspirators." *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (¶37) (Miss. 2004). Mrs. Smith alleges that her son was strangled to death by jail officers and the nurses agreed with one or more persons to cover it up. If true, this would be an agreement to obstruct justice and to deny Lee's beneficiaries access to courts, which are unlawful purposes.

This case centers around the cause of Lee's death at the HCADC. Competing autopsy reports rule his death as either a natural pulmonary embolism or as a homicide via strangulation and physical restraint. The only evidence in her favor is that the second autopsy revealed that Lee was strangled to death while at the jail. The Court will view this evidence in the light most favorable to Mrs. Smith and assume, *arguendo*, that Lee was strangled to death at the jail.

It is undisputed that when Nurses Sumrall and Hartley were called from medical to attend to Lee, they were told that he was having a seizure. There is no evidence that they were told he was strangled by anyone. It is undisputed that the nurses did not witness whatever caused the onset of his collapse. According to them and all of the eyewitness testimony, the nurses observed him displaying seizure activity. He was making snoring sounds common in seizures, shaking and he was foaming at the mouth. C.P.R. efforts roused Lee and one of the nurses asked him if he

had a history of seizures, which he denied. He attempted to stand up but then, according to the nurses and other eyewitnesses, he began to display signs of having another seizure and fell down again. C.P.R. was continued until the ambulance arrived. On this record there is no evidence that, if Lee was strangled, the nurses knew anything about it.

The only possible evidence would be the alleged injuries to Lee's neck which caused Dr. Okoye to opine that Lee was strangled. These injuries are described as internal only: "A. Extensive acute hemorrhage of the mucosal lining of the right ary-epiglottic fold and right commissure of the larynx. B. Focal acute hemorrhage of the right neck skeletal muscle. C. Acute congestion with hemorrhage of the mucosal lining of the right side of the proximal trachea." (Payne's 2d Mot. Summ. J. Ex. M at1). There are no pictures for the Court to determine whether the nurses saw any external signs of strangulation or trauma to his throat. There is no testimony that there was any such bruising at the time the nurses were present. If a jury were to accept Dr. Okoye's opinion that Lee was strangled, and if they could infer that there were such external signs of strangulation which the nurses noticed, there is no evidence that the injuries were inflicted by deputies or that the nurses had any reason to believe so.

Because (1) there is no evidence that the nurses knew, thought, or were on notice that Lee was strangled by jail officers, and (2) there is no evidence that deputies had anything to do with his death, there is no evidence that the nurses agreed to cover it up excessive force. Because there is no evidence that Health Assurance's nurses engaged in a civil conspiracy, Health Assurance is entitled to judgment as a matter of

5

law. The Court need not consider whether Health Assurance would be vicariously liable if they had.

**IT IS THEREFORE ORDERED AND ADJUDGED** that for the reasons stated above, Defendant Health Assurance, LLC's second Motion for Summary Judgment [152] should be and is hereby **GRANTED.**

**SO ORDERED AND ADJUDGED** this the 27th day of September, 2010.


*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE